**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roberto RAMIREZ–RANGEL, and
Joel Lobo–Osuna, Defendants–
Appellants.**

Nos. 95–10074, 95–10075.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1995.

Decided Jan. 9, 1997.

Michael S. Reeves; Gregory A. Bartolomei, Bartolomei & Victor, Phoenix, AZ, for the defendants-appellants.

Stanley L. Patchell, Assistant United States Attorney, Phoenix, AZ, for the plaintiff-appellee.

Before: BROWNING, CANBY, and HALL, Circuit Judges.

CANBY, Circuit Judge:

Defendants Roberto Ramirez–Rangel and Joel Lobo–Osuna appeal their convictions and sentences for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (Count 1); use of a firearm (machine guns) in drug trafficking in violation of 18 U.S.C. § 924(c)(1) (Count 2); and being illegal aliens in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) (Counts 3 and 4). Both defendants maintain that the district court should have granted their motions to reveal the identity of the confidential informant, and

that there was insufficient evidence to support their convictions on Counts 1 and 2. A primary reason that the defendants contend that they need the informant's testimony is that it might help to establish that the defendants did not know that the weapons they were receiving from the government agent were machine guns, carrying a 30–year mandatory sentence. A disputed question is whether their knowledge or lack of it is material.

We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm the convictions on all counts, and the sentences on Counts 3 and 4. We vacate the sentences on Counts 1 and 2, and remand to the district court to conduct an *in camera* hearing on whether the confidential informant's testimony would be relevant and helpful for purposes of sentencing on Count 2, and for resentencing on Counts 1 and 2 if further proceedings lead to that result.

**BACKGROUND**

On April 13, 1994, a confidential informant for the Bureau of Alcohol, Tobacco, and Firearms (ATF) contacted an ATF Special Agent (the "agent") and told him that he knew of two male Mexican nationals who wished to trade methamphetamine for machine guns and money. The agent asked the informant to arrange a meeting between the agent and the two men. To arrange that meeting, the informant (without the agent) met with the two defendants that same day.

A prime reason for the defendants' motion to reveal the identity of the informant was to explore what occurred at this first meeting. At the motion hearing, the agent testified concerning what the informant told the agent had occurred there. The informant said that he had met with Ramirez–Rangel in a bar. According to the informant, Lobo–Osuna was also in the bar, but was at a distance and out of hearing during the discussion between the informant and Ramirez–Rangel. Ramirez–Rangel merely pointed Lobo–Osuna out to the informant at the bar. Ramirez–Rangel agreed to meet with the agent the next day and to conduct an exchange of approximately one pound of methamphetamine from Ra-

mirez–Rangel for machine guns and money from the agent.

The meeting to make the exchange occurred the next day, April 14. Attempts to record and videotape the meeting were mostly unsuccessful, so evidence of the transaction consisted mainly of the agent's trial testimony. Ramirez–Rangel and Lobo–Osuna maintain that they speak only Spanish. The agent does not speak Spanish except for a few basic words such as "aqui" for "here." The defendants and the agent conducted the transaction by using a few basic English and Spanish words and by using hand signals. Neither defendant used the word "machine guns" or any synonymous English or Spanish word for guns, firearms, rifles, etc., during the transaction.

Ramirez–Rangel and Lobo–Osuna had already arrived in their pickup truck at the appointed place, a car wash, when the agent drove up. The agent got out of his car, shook hands with Ramirez–Rangel and Lobo–Osuna, then went back to the trunk of his car and removed a military "sea bag" containing two AK–47 machine guns. The agent put the bag in the bed of the truck in which the defendants had arrived and then started to open the bag to reveal the contents. Lobo–Osuna said, "No, no, no," indicating that the agent should stop opening the bag, and then indicated that the agent should put the bag of guns up front in the cab of the truck. Following Lobo–Osuna's instructions, the agent put the bag on the front passenger seat of the truck. Ramirez–Rangel then put the bag behind the driver's seat and began to look into it. Lobo–Osuna then told the agent to sit in the passenger seat of the truck, which he did. Ramirez–Rangel stopped looking at the bag and sat in the driver's seat beside the agent. The bag of guns was opened only partially, and the defendants did not take the guns out of the bag or examine them.

Lobo–Osuna was standing outside of the truck on the passenger side, between the seat and the open truck door. The agent asked in English if they had the "stuff." Ramirez–Rangel said yes and asked if the agent had money. The agent replied yes and again asked for the "stuff." Lobo–Osuna

pointed under the seat. The agent asked Ramirez–Rangel if he, the agent, could get the package, and Ramirez–Rangel said yes. The agent pulled out a package wrapped in aluminum foil, put it down on the seat, and asked Ramirez–Rangel to open it. The other ATF agents who were watching the transaction testified at trial that, at this juncture, Lobo–Osuna was standing at the back of the truck, smoking a cigarette, and was looking from side to side. Ramirez–Rangel opened the package revealing about one pound of methamphetamine.

The agent said that it looked good, and Ramirez–Rangel asked again for the money. The agent handed a roll of money to Ramirez–Rangel, and then made a signal to the ATF agents to close in and make the arrests, which they did. The ATF later tested the package of drugs for fingerprints, but found none. Neither defendant was carrying a weapon of any kind at the time of the arrests.

After the arrests, ATF agents read both defendants their advice-of-rights in Spanish from a printed form that contained both English and Spanish translations. Both defendants signed the Spanish translation of the forms and waived their right to remain silent and to counsel. Lobo–Osuna stated that he had met Ramirez–Rangel at a bar, then went to the car wash to meet with a "white guy" that he had not met before, and then was arrested.

The agent who interviewed Ramirez–Rangel testified that Ramirez–Rangel spoke both English and Spanish. The interviewing agent transcribed in English Ramirez–Rangel's statement, and Ramirez–Rangel then signed the statement. In the statement, Ramirez–Rangel said that someone he did not know asked him to deliver the methamphetamine and to exchange it for cash and machine guns. Ramirez–Rangel was to receive $200 for conducting the transaction. At trial, any references to Lobo–Osuna were redacted from this statement. Both defendants admitted they were in the United States illegally.

A federal grand jury indicted Ramirez–Rangel and Lobo–Osuna for conspiracy to distribute and possess methamphetamine with intent to distribute, possession of methamphetamine with intent to distribute, use of a firearm in drug trafficking, and being illegal aliens in possession of firearms. Lobo–Osuna filed a motion to disclose the identity and location of the confidential informant, which the government opposed. The district court ordered the government to disclose the identity and location of the informant or, in the alternative, to make the informant available to defense counsel. The government moved for reconsideration, and Ramirez–Rangel moved for disclosure of the informant's identity. The government moved to dismiss the conspiracy charge. The district court dismissed the conspiracy charge with prejudice, granted reconsideration of Lobo–Osuna's motion, and then denied both motions to reveal the identity of the informant on the ground that the informant's testimony would have related to the conspiracy charge and not the charges of distribution of methamphetamine or use of firearms.

At the outset of trial, the defendants moved for dismissal on the ground that the government had withheld material exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Fed.R.Crim.P. 16. The district court denied the motion.

Lobo–Osuna did not testify at trial, but Ramirez–Rangel did. Ramirez–Rangel testified that he made his incriminating statement to the interviewing agent because he was "very scared" and had "never had this kind of thing before, ... [and] did not know what to say." Ramirez–Rangel denied any knowledge of what was happening and said that he had merely been asked to drive the truck because Lobo–Osuna did not know how to drive a standard transmission truck. Ramirez–Rangel claimed that he did not understand what the agent was saying during the transaction, was not aware that a drug transaction was taking place, and did not know that guns were in the sea bag.

The jury returned guilty verdicts on all counts of the redacted indictment (the conspiracy charge having been eliminated). At the sentencing hearing, both defendants moved for downward departures of their sen-

tences on the section 924(c)(1) convictions on the ground that there was a lack of evidence that the defendants knew that the weapons were machine guns. The district court responded to the motions by departing downward ten levels as to both defendants' sentences on the methamphetamine convictions "only because of the knowledge question on Count 2, the 924(c) and the 30 year mandatory consecutive sentence." The district court further stated that the "only reason" it was departing was the "gross magnitude of the [360-month mandatory] sentence [for the section 924(c)(1) convictions]," on which it had no authority to depart downward. The district court, however, made no specific finding regarding whether there was sufficient evidence to establish that the defendants knew the firearms were fully automatic. The court said that it did not rely on the single sentence in the presentence report reciting that defendants acknowledged that the weapons were machine guns.

In addition to their sentences on Counts 1, 3, and 4, which were to run concurrently, both defendants were sentenced to a consecutive 360 months on Count 2, which is the mandatory sentence under section 924(c)(1) if the firearm involved is a machine gun.

## ANALYSIS

### I. Section 924(c) Convictions and Sentences for Use of a Firearm During and in Relation to a Drug Trafficking Crime

▮ Both defendants contend that the district court erred by denying their motions to reveal the identity and location of the confidential informant because the informant's testimony might have been helpful to their defenses on the section 924(c) charges. We review the district court's order for an abuse of discretion. *United States v. Staufer,* 38 F.3d 1103, 1109 (9th Cir.1994).

▮ The government enjoys the privilege of declining to reveal the identity of its confidential informants, but "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). The district court must consider the competing interests of the defendant for "relevant and helpful" testimony and the public's interest in "protecting the flow of information." *Id.* at 62, 77 S.Ct. at 628–29. The defendant bears the burden of showing the need for disclosure. "He must show that he has more than a 'mere suspicion' that the informant has information which will prove 'relevant and helpful' or will be essential to a fair trial." *United States v. Amador–Galvan,* 9 F.3d 1414, 1417 (9th Cir.1993).

▮ The informant, as the district court recognized, was a percipient witness to the original agreement to exchange firearms for drugs. Once the conspiracy count was dismissed, the agreement ceased to be important as an offense in itself. Whether it remained of significance for the firearm count depends upon whether the defendant's *knowledge* that the firearms were fully automatic is material to their defense. We conclude, for reasons to be explained, that such knowledge is material to the section 924(c)(1) sentence.

The defendants do not contend that section 924(c)(1) requires the government to prove as an *element* of the crime that they knew the nature of the firearms—that they were machine guns. That precise issue consequently is not before us. In any event, we have found no cases addressing that question under section 924(c)(1).[1] The Supreme Court has required such proof in a case

---

1. In *United States v. Martinez,* 967 F.2d 1343 (9th Cir.1992), we said that to convict under section 924(c)(1), the government had to prove that "the defendant: (1) *knowingly* used or carried a firearm and/or a machine-gun (2) during and in relation to a drug trafficking crime." *Id.* at 1346 (emphasis added). The decision made no point of "knowingly," however, and did not state

whether that term would apply only to use or carriage, or could be extended to knowledge of the nature of the weapon.

In *United States v. Thompson,* 82 F.3d 849 (9th Cir.1996), we found it unnecessary to address the question whether the jury must find knowledge under section 924(c)(1) because we reversed the conviction on other grounds. *Id.* at 853 n. 6.

where the charge was possession of a machine gun in violation of 26 U.S.C. § 5861, when possession of the gun in question would have been wholly lawful and innocent if it had not been converted to be capable of fully automatic fire. *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); *accord United States v. Herbert,* 698 F.2d 981 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983); *see also United States v. Thompson,* 82 F.3d 849, 853–54 (9th Cir.1996) (knowledge that device was silencer required for conviction under section 5861). The Supreme Court's conclusion was buttressed by the harsh penalties imposed by the statute. *Staples,* 511 U.S. at 614–18, 114 S.Ct. at 1802–03; *see also Herbert,* 698 F.2d at 987 ("Congress did not intend this statute to be so draconian").

Unlike section 5861, section 924(c)(1) deals with conduct that would not otherwise be innocent: the use of a gun in relation to a drug transaction or crime of violence. On that point, *Staples* is distinguishable. Section 924(c)(1) does have draconian effects, however. It provides that a person who uses or carries a machine gun [2] during and in relation to a drug trafficking crime shall be imprisoned for 30 years. The sentence is ten years if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, and the sentence is five years for other firearms. The sentence under section 924(c)(1) must be served consecutively to any other term of imprisonment, including that imposed for the drug trafficking offense in which the firearm was used or carried.

There is no question that bartering a firearm for drugs constitutes "use" of the weapon "in relation to [a] drug trafficking crime" within the meaning of section 924(c)(1). *See Smith v. United States,* 508 U.S. 223, 225–37, 113 S.Ct. 2050, 2052–58, 124 L.Ed.2d 138 (1993); *see also Bailey v. United States,* — U.S. ——, ——, ——, 116 S.Ct. 501, 507, 509, 133 L.Ed.2d 472 (1995). Thus, the terms of the statute appear to apply to the defendants

whether or not they knew that the weapons were machine guns; the defendants, at least, do not contend to the contrary.

The difficulty with the application of the severe penalties of section 924(c)(1) in the circumstances of this case is that the government supplied the weapons, and delivered them in a covered bag.[3] If knowledge or intent of the defendants is utterly immaterial, then the government is free to put machine guns in the bag even if they were not bargained for, and thereby add 25 more years to the penalty imposed on defendants with no additional culpability on their part. It is because of the possibility of this kind of abuse that several courts, as well as the Sentencing Commission, have recognized the doctrine of "sentencing entrapment."

Sentencing entrapment occurs when " 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment.' " *Staufer,* 38 F.3d at 1106 (quoting *United States v. Stuart,* 923 F.2d 607, 614 (8th Cir.), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991)). The issue of sentencing entrapment usually arises with regard to the quantity of drugs involved in a sale in which a government agent participates. Thus, the Sentencing Guidelines provide that, in a "reverse sting," where the government sells drugs at an artificially low price in order to permit the targeted buyer to buy a "significantly greater quantity" than his resources otherwise would have permitted, "a downward departure may be warranted." U.S.S.G. § 2D1.1, application note 17. We also held, in a case where the government induced a target to *sell* far more of a controlled substance than had formerly been within his practice or resources, that sentence entrapment applied and a downward departure was authorized. *Staufer,* 38 F.3d at 1107. We stated that "law enforcement agents should not be allowed to structure sting operations in such a way as to

---

2. A machine gun, as that term is used in section 924(c)(1), is a weapon that shoots "automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see also* 18 U.S.C. § 921(a)(23).

3. We recognize that there was evidence that Ramirez–Rangel began to look into the partly-opened bag. The jury was not asked to find, however, that he ascertained that the weapons were machine guns, and we cannot assume that the jury so found.

maximize the sentences imposed on defendants." *Id.*

Sentencing entrapment may work even more unfairly in the present situation than it does in the typical drug sale case. The Guidelines and *Staufer* deal with a case where the defendant did not originally intend to purchase or sell the larger amount, but manipulation by government agents led the defendant eventually to *agree* to the larger amount. · The question then becomes the standard entrapment issue: was the defendant predisposed to commit the larger offense when the opportunity arose? [4]

The question may be different in cases like the present one, however. If the defendants did not initially bargain for machine guns in return for drugs, and the government supplied machine guns in a covered bag, it is possible that the defendants *neither agreed nor knew* that machine guns were involved. In such a situation, proof that the defendants were predisposed to deal in machine guns would not justify the larger sentence. The government ought not to be able to commit an entire act for a defendant without the defendant's knowledge, in order to increase a penalty by 25 years.[5]

Thus, with regard to sentencing entrapment in the circumstances of this case, the defendants' intent or lack of it is material. As a consequence, the informant becomes a potentially important witness. If the original agreement with the informant did not include an exchange of drugs for machine guns, the defendants would have a strong case of sentencing entrapment.

There is a further obstacle facing the defendants in presenting a claim of sentencing entrapment in this case, however. The normal way for defendants to remedy sentencing entrapment is to seek a downward departure on that ground. *See* U.S.S.G. § 2D1.1, application note 17; *United States v. Baker,* 63 F.3d 1478, 1500 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 824, 133 L.Ed.2d 767 (1996). The defendants here requested that relief at sentencing.

The difficulty with such a procedure, of course, is that the sentences prescribed by section 924(c)(1) are mandatory. Once the defendant is convicted by the jury of using a firearm in relation to a drug trafficking offense, the only consideration at sentencing is what type of firearm was involved. If the firearm is one that requires more than the five-year mandatory minimum sentence, the nature of the firearm will have been established by the verdict. *See United States v. Alerta,* 96 F.3d 1230, 1235 (9th Cir.1996); *see also United States v. Martinez,* 7 F.3d 146, 148 & n. 1 (9th Cir.1993). In the usual case, the sentence specified by section 924(c)(1) must follow.

But if the defendant can make out a case of sentencing entrapment, then the determination of what type of firearm the defendant is to be accountable for at sentencing must be made by the district court. If the doctrine of sentencing entrapment is to be given effect under section 924(c)(1), then the district court must base the sentence not only on the type of weapon involved in the transaction, but also on the intent and knowledge of the defendant in negotiating and carrying out the transaction. In the current case, if the informant were to testify that the original deal was to exchange drugs for firearms

---

4. A variant of sentencing entrapment also occurs in conspiracy cases where an undercover agent and defendant negotiate a drug sale and the agent inflates the agreed amount of drugs to a point beyond the intent and capacity of the defendant to produce. The Guidelines provide that the court should exclude from the sentencing calculation "the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." U.S.S.G. § 2D1.1, application note 12; *see United States v. Naranjo,* 52 F.3d 245, 249–51 (9th Cir.1995).

5. Thus, in rejecting an argument that the government was required to prove knowledge of the exact characteristics of the weapon in a case

where one defendant had bargained for machine guns and the other had handled them upon receipt, the District of Columbia Circuit noted:

> We are thus not presented with a situation in which the government, as part of a "sting," foists on duped receivers unwanted automatic weapons. Such a case would rank with one in which the government, after causing an individual to believe that a sealed bag he is handed contains marijuana, then prosecutes him for possessing heroin.

*United States v. Harris,* 959 F.2d 246, 259 n. 15 (D.C.Cir.), *cert. denied,* 506 U.S. 932, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992).

generally, then the defendants may be entitled to be sentenced for use of a firearm, carrying a five-year minimum sentence, instead of for use of a machine gun, carrying a thirty-year sentence.

We want to make clear that these special sentencing considerations come into play only when the defendant can raise a claim of sentencing entrapment. Under section 924(c)(1) this situation will usually arise only in cases involving negotiations and transactions between police (including their informants) and the defendants, in which the police supply the firearms. When the analogy is to drug sales cases in which the government's conduct led the defendant knowingly to enter a transaction carrying a higher sentence, the defendant will have the burden of proving that he was predisposed to commit only a lesser offense. *See Naranjo,* 52 F.3d at 250–51 (noting that the defendant had the burden of proof to demonstrate that he had neither the intent nor the resources to carry out the greater offense). When the defendant neither negotiated for *nor knew* that firearms carrying a greater than five-year sentence were involved in the transaction, and the government caused such firearms to be involved, then the defendant may not be sentenced above the five-year mandatory minimum.

We conclude, therefore, that it was error for the district court to deny the motion to reveal the identity of the informant without holding an *in camera* hearing to determine whether the informant's testimony would be relevant and helpful to the defendants on the question of sentencing entrapment. In so ruling, we follow the reasoning of *United States v. Ordonez,* 737 F.2d 793, 808–10 (9th Cir.1983). In *Ordonez,* the government opposed the defendant's motion for disclosure by submitting the affidavits of two law enforcement officers for *in camera* review. *Id.* at 808. The district court denied disclosure; its order merely stated that the defense had stated a valid need for disclosure, but that the information received *in camera* involved a "strong concern for the public interest as well as the safety of that individual." *Id.* We could not determine from the district court's order whether it had properly consid-

ered the relevant factors: the crime charged, the possible defenses, the significance of the informant's testimony, or any other relevant factors. *Id.* We remanded to the district court to conduct an *in camera* hearing, so that on review there would be a more complete record if the district court adhered to its denial of the motion. *Id.* at 809. We were concerned that "the trial court relied on hearsay statements and the factual conclusions of an officer who had spoken to the informer." *Id.*

The same considerations call for an *in camera* hearing in this case. We therefore vacate the sentence on Count 2 and remand this matter to the district court to conduct such an *in camera* hearing. Because the sentence on Count 1 was expressly dependent on the sentence on Count 2, we vacate the sentence on Count 1 as well. If, as a result of the *in camera* hearing, the district court finds that the testimony of the informant is not relevant and helpful to the defendants, then the court shall reinstate the sentences on Counts 1 and 2. If the district court concludes that the testimony is relevant and potentially helpful as to the sentencing entrapment claim, then the district court must conduct a hearing to resolve that claim, and then, according to the outcome, either reinstate the sentences on Counts 1 and 2 or resentence the defendants on those two counts.

■■■ The defendants present two additional arguments relating to their convictions under section 924(c)(1). First, they contend that their due process rights were violated because the government withheld favorable material evidence in declining to reveal the informant. *See United States v. Gordon,* 844 F.2d 1397, 1403 (9th Cir.1988) (citing *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)). Like the district court, however, we conclude that the informant's evidence could have no bearing on a rational jury's verdict of conviction on any of the counts. To the extent that the informer's evidence affects sentencing on Count 2, the *Brady* issue is subsumed by our mandate with regard to the section 924(c)(1) sentence.

Finally, the defendants argue that, even if the district court did not err by denying the motions to reveal the informant's identity, then the section 924(c) convictions should be reversed because there was insufficient evidence to support the convictions. The defendants do not contend, however, that knowledge of the nature of the weapons was an element of the offense, and they did not object to the instructions omitting such an element. Apart from the issue of sentencing entrapment that has been presented only in the request to reveal the identity of the informer, there was ample evidence to permit a rational jury to find beyond a reasonable doubt that both defendants traded methamphetamine for machine guns. We therefore reject the contention that the evidence was insufficient to permit conviction on the section 924(c)(1) count.

## II. Convictions for Distribution of Methamphetamine

The defendants argue that their convictions for possession of methamphetamine with intent to distribute should be reversed because there was insufficient evidence to support the convictions. The evidence is sufficient to support the convictions if, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Lennick,* 18 F.3d 814, 818 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." *Lennick,* 18 F.3d at 820.

The defendants contend that the government failed to prove actual or constructive possession, and they emphasize the lack of fingerprints on the drug package. A rational jury, however, could easily have found beyond a reasonable doubt that the defendants knowingly or intentionally possessed with intent to distribute 100 grams or more of methamphetamine. 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(viii). When the agent asked for the location of the "stuff,"

Lobo–Osuna pointed below the seat. Ramirez–Rangel then opened the package of drugs in the presence of the agent, asked for the money, and began counting it. From this evidence, the jury could find that Ramirez–Rangel actually possessed, and Lobo–Osuna constructively possessed, the drugs. The government has proved "constructive possession" if it shows that "the defendant both knows of the presence of the contraband and has the power to exercise dominion and control over it." *United States v. Sanchez–Mata,* 925 F.2d 1166, 1169 (9th Cir.1991). The evidence was sufficient with regard to both defendants.

## CONCLUSION

We affirm both defendants' convictions on Counts 1 and 2. We conclude that there was sufficient evidence to support the convictions on Count 1 for distribution of methamphetamine and Count 2 for use of a firearm in relation to a drug trafficking offense. We conclude that there was no *Brady* violation affecting Count 2.

The defendants do not contest their convictions or sentences on Counts 3 and 4. We therefore affirm the convictions and sentences on those two counts.

We vacate the sentence on Count 2 and remand for further proceedings in accordance with this opinion. Because the sentence on Count 1 was expressly dependent on that of Count 2, we vacate the sentence on Count 1 as well, and remand the matter to the district court. *Cf. United States v. Soto,* 793 F.2d 217 (9th Cir.1986), *amending* 779 F.2d 558 (9th Cir.1986), *cert. denied,* 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987). If the district court resentences the defendants on Count 2, it should resentence them on Count 1 as well. Otherwise, the court should reinstate its sentences on Counts 1 and 2.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.**