UNITED STATES of America

v.

**James D. SUMLER, a/k/a Chew, a/k/a Smoke**

**James D. Sumler, Appellant**

No. 01–3143.

United States Court of Appeals, Third Circuit.

Argued May 1, 2002.

Filed June 27, 2002.

Karen S. Gerlach (Argued), Assistant Federal Public Defender, Shelley Stark, Federal Public Defender, Pittsburgh, PA, for Appellant.

Michael L. Ivory (Argued), Assistant United States Attorney, Bonnie R. Schlueter, Assistant United States Attorney, Mary Beth Buchanan, United States Attorney, Pittsburgh, PA, for Appellee.

Before: NYGAARD, ROTH, and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this appeal we conclude that bartering illegal drugs for a gun constitutes use of a firearm in connection with drug trafficking and invokes the mandatory sentence provisions of 18 U.S.C. § 924. We also decide that evidence of brandishing the gun on subsequent occasions was ad-

missible in connection with a count charging a drug distribution conspiracy. Accordingly, we will affirm the judgment of the District Court.

A jury convicted defendant of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846 and the use of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). He was sentenced to 82 months imprisonment on the conspiracy count and a consecutive 60-month term on the gun charge.

Defendant and others sold crack-cocaine from a house in Jeanette, Pennsylvania for several months in 1999. Joe Wells was one of the customers who frequented the place. On one occasion, Wells traded a gun for cocaine from a co-defendant who also used the house for drug trafficking. Defendant offered to buy the gun from the co-defendant, but was refused. A few days later, defendant obtained a gun from Wells in exchange for drugs.

The government produced evidence that after acquiring the gun, defendant used it to threaten a disgruntled drug customer, as well as some inhabitants of the house. Whether this was proper evidence had been briefed and discussed at some length in pretrial conferences. Ultimately, the trial judge ruled that it could be admitted.

On appeal, defendant asserts that the District Court erred in two critical areas. The first challenge is to the ruling that the acquisition of the gun in exchange for crack-cocaine was a statutorily proscribed "use" in "relation to" a drug transaction. The second objection is to the District Court's ruling that the brandishing and threatening use of the gun were admissible as evidence of the drug conspiracy. In addition, defendant argues that the two counts should have been severed.

## I.

The most serious point defendant raises is the criminality of trading drugs for guns, an issue that has divided the Courts of Appeals. The question is whether such an exchange constitutes "use" of a gun in relation to drug trafficking. 18 U.S.C. § 924(c)(1)(A) requires the imposition of specific penalties if the defendant "during and in relation to ... drug trafficking uses ... a firearm."

*Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), held that an individual who trades a gun for drugs, rather than selling it for money, violates section 924(c)(1). The Supreme Court pointed out that two conditions must be satisfied to sustain a conviction: the gun must be "used" and that use must occur "in relation to" drug trafficking. *Smith*, 508 U.S. at 232, 113 S.Ct. 2050. After a thorough analysis, the Court concluded that Congress intended "use" to cover not only utilization as a weapon but also as an article of trade or barter. *Id.* at 236–37, 113 S.Ct. 2050. The Court reasoned that Congress did not intend "to draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter ...." *Id.* at 240, 113 S.Ct. 2050.

"Use," however, was not in itself enough, because utilization must necessarily be established "during and in relation to" drug trafficking. In construing that requirement, the Court stated that the gun's "presence ... was not the product of happenstance," but was an integral part of the narcotics transaction. *Id.* at 238, 113 S.Ct. 2050. Without the gun the deal would not have been possible in the circumstances presented there.

Two years later, the Court revisited the "use" application in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). In that case, police officers found drugs in the passenger compartment of the defendant's automobile and a gun in the trunk. The Court decid-

ed that in that context and under section 924(c)(1), mere possession of a gun was not sufficient and that "the Government must show active employment of the firearm" during commission of the crime. *Bailey,* 516 U.S. at 143–44, 116 S.Ct. 501.

As examples of "use," the Court cited brandishing, displaying, bartering, striking with, and firing or attempting to discharge a firearm. *Id.* at 148, 116 S.Ct. 501. The Court took great pains to point out that *Smith* was not to be considered undermined. "[O]ur decision today is not inconsistent with *Smith* ... [where] it was clear that the defendant had 'used' the gun; the question was whether that particular use (bartering) came within the meaning of section 924(c)(1)." *Id.*

Although *Smith* resolved the "use" issue in circumstances where a defendant traded a gun in order to obtain drugs, the question remained whether the statutory penalties were applicable when the situation was reversed. In other words, does section 924(c)(1) apply when drugs were traded for a gun? On this point, the Courts of Appeals have disagreed.

In *United States v. Ulloa,* 94 F.3d 949, 956 (5th Cir.1996), the Court of Appeals for the Fifth Circuit, upholding the defendant's conviction, stated that "[b]y bartering drugs for firearms, [defendant] 'actively employed' the firearms, because they were an 'operative factor' in the drug trafficking offenses: [Defendant] required that he be furnished firearms in exchange for his drugs."

In *United States v. Cannon,* 88 F.3d 1495 (8th Cir.1996), the defendants acquired guns for drugs and cash. The Court of Appeals for the Eighth Circuit upheld the conviction and rejected the contention that *Smith* did not govern because

it involved trading guns for drugs, rather than drugs for guns. *Cannon,* 88 F.3d at 1509. The Court viewed this argument as "a distinction without a difference ... 'use' certainly includes ... bartering." *Id.* (citing *Bailey,* 516 U.S. at 148, 116 S.Ct. 501).

The Court of Appeals for the Ninth Circuit agreed that "[t]here is no question that bartering a firearm for drugs constitutes 'use' of the weapon 'in relation to [a] drug trafficking crime' within the meaning of section 924(c)(1)." *United States v. Ramirez–Rangel,* 103 F.3d 1501, 1506 (9th Cir.1997) (citing *Smith,* 508 U.S. at 225–37, 113 S.Ct. 2050). In that case, the machine gun had been supplied by undercover law enforcement agents. *Ramirez–Rangel,* 103 F.3d at 1503. Concerned about the officers' conduct, the Court remanded for further proceedings on the defense of sentence entrapment. *Id.* at 1506–09.[1] *See also United States v. Garnett,* 243 F.3d 824, 832 (4th Cir.2001) ("Undoubtedly, giving the gun to [a conspirator] and receiving cocaine base in return constitutes a 'trade,' and such circumstances can conclusively constitute 'use' 'during and in furtherance of' a drug trafficking offense.").

Cases in other Courts of Appeals have come to a different conclusion. In *United States v. Stewart,* 246 F.3d 728 (D.C.Cir. 2001), the Court reversed a conviction where the defendant had secured guns from undercover agents in exchange for cash and crack-cocaine. After reviewing *Smith* and *Bailey,* the Court reasoned that "[t]he [defendant] has not employed the gun, availed himself of the gun, or derived any service from the gun by simply trading his drugs for it. [A] seller does not use a buyer's consideration." *Stewart,* 246 F.3d at 731 (internal quotations omitted).

---

**1.** "Sentencing entrapment occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped into

committing a greater offense subject to greater punishment." *Id.* at 1506. (internal citations and quotations omitted).

In *United States v. Warwick*, 167 F.3d 965 (6th Cir.1999), the Court concluded that by accepting a weapon offered by an undercover agent, a defendant does not actively do anything because his conduct is inherently passive. The Court found *Ulloa* and *Cannon* distinguishable because defendants in those cases had actively devised the plan for the exchange of drugs for guns. *Warwick*, 167 F.3d at 976. *See also United States v. Layne*, 192 F.3d 556 (6th Cir.1999) (following *Warwick*).

Similarly, in *United States v. Westmoreland*, 122 F.3d 431 (7th Cir.1997), the Court reversed a conviction and applied the passive conduct approach where the government agent provided the gun. Significantly, in that case the agent admitted that he had deliberately made the gun a part of the transaction in order to set up a conviction under section 924(c)(1). *Westmoreland*, 122 F.3d at 436. The Court noted that "[w]e might well have a different case had the transaction occurred between two defendants instead of between a government agent and a defendant." *Id.* at 436 n. 1. Further indicating its wariness, the Court also found "significant the fact that the government agent introduced the gun into the transaction, rather than the defendant requesting the gun in payment for the drugs. But we need not decide the effect of those factors today...." *Id.*

■ Thus, two of the courts that declined to extend *Smith* to a drugs-for-gun transaction did so in circumstances where the activities of the government agents and sentence entrapment colored the picture. We are confronted with a circuit split, but the circumstances in the case at hand guide us easily toward the majority approach rather than the much weaker minority cases. Here, the transaction was between two private individuals and, therefore, the spectre of sentence entrapment does not lurk in the shadows. In addition, it was the defendant in this case who actively solicited the barter of drugs for guns.

The *Westmoreland* Court advanced a forceful argument in declaring "there is no grammatically correct way to express that a person receiving a payment is thereby 'using' the payment." 122 F.3d at 435. Although we grant legitimacy to that argument, we cannot evade the brute fact that the Supreme Court in both *Bailey* and *Smith* explained that the word "use" means "barter." We recall Judge Learned Hand's admonition, "But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary ...." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945). Humpty Dumpty in Lewis Carroll's *Through the Looking Glass* stated it best when he said, "When I use a word ... it means just what I choose it to mean neither more nor less." L. Carroll, Through the Looking Glass & What Alice Found There 124, reprinted in Journeys in Wonderland (Derrydale 1979). We too are not free to ignore a dictated definition.

Therefore, we conclude that in the circumstances of this case the defendant was properly convicted of a section 924(c)(1) violation.

## II.

Defendant's second major contention is that the District Court erred in admitting evidence of three incidents when the defendant pointed the gun at individuals during disagreements over the conduct of drug trafficking at the crack house.

As noted earlier, the admissibility of this evidence was reviewed in detail during pretrial conferences. The Government committed itself to limiting the evidence of gun pointing to the drug conspiracy count, and not to offer it in connection with the section 924 count. The district judge decided that the testimony would be admitted, but only in connection with the con-

spiracy count because the evidence was "relevant and it was admissible as such rather than as 404(b) [character evidence]." He also concluded that the prejudice did not outweigh the relevance.

■ Federal Rule of Evidence 404 bars evidence of past acts for the purpose of showing a propensity for committing similar criminal acts or generally for showing the bad character of the defendant. However, as we pointed out in *United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir.1999), "Rule 404(b) does not limit the admission of evidence of the defendant's participation in acts of violence as direct proof of a conspiracy." Activity, albeit violent, that shows the existence and nature of a conspiracy is relevant. *See* 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, § 5239, at pages 450–52 (1978 & Supp. 2001).

[3] In this case, defendant brandished his gun in response to a complaint by a dissatisfied customer. He did so again when one of his cohorts failed to warn him about a customer being armed and, on another occasion, to keep a customer at a distance from a crack house. These incidents were conduct connected with and occurring during the conspiracy.

■ Defendant also contends that such evidence had a spillover effect on the gun transaction count and, therefore, a severance should have been granted. We have considerable doubt that this issue was properly raised in the District Court, but assuming that it was, it lacks merit. Here, the evidence was inextricably intertwined, and denial of severance would not have been an abuse of discretion.

Accordingly, the judgment of the District Court will be affirmed.