[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 4, 2005
THOMAS K. KAHN
CLERK

No. 03-11950

D. C. Docket No. 98-00018-CR-WCO-2-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCISCO MONTANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 4, 2005)**

ON PETITION FOR REHEARING

Before BARKETT and HILL, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation

PER CURIAM:

Plaintiff-Appellee's Petition for Rehearing filed November 10, 2004 is GRANTED in part, in order to remedy incorrect references to 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) governs the statute of limitations for state prisoners seeking post-conviction relief. Since Montano is a federal prisoner, the opinion should instead reference 28 U.S.C. § 2255, ¶ 6, the equivalent provision governing federal prisoners. Accordingly, the Court substitutes the following opinion. Plaintiff-Appellee's Petition for Rehearing is otherwise DENIED.

Francisco Montano appeals the district court's denial of his motion seeking leave to file an untimely 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence under 18 U.S.C. § 924(c), which prohibits use of a firearm during or in relation to a felony drug trafficking transaction. Pursuant to a negotiated plea agreement, Montano pled guilty on July 24, 1998 and was sentenced on October 6, 1998, on two counts: the above-mentioned § 924(c) charge, as well as possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a)(1). Montano did not file a direct appeal. Montano subsequently filed his motion for permission to file an untimely § 2255 motion, alleging *inter alia* actual innocence of the

2

§ 924(c) firearm conviction.[1]  The district court denied Montano's motion, finding that he was not actually innocent of the § 924(c) charge and thus declining to answer whether actual innocence is sufficient grounds to waive the period of limitations for filing of a § 2255 motion.  Granting Montano's certificate of appealability, the district court certified two related questions for our review.  First, does bartering drugs for guns constitute "use" of a firearm within the meaning of § 924(c)?  If not, does actual innocence excuse Montano's failure to bring his § 2255 motion within the one-year statutory period under 28 U.S.C. § 2255, ¶ 6 for filing a motion to vacate a sentence?

On April 13, 1998, state and federal law enforcement officers directed a confidential informant to meet with Montano in a grocery store parking lot in Gainesville, Georgia.  Inspector Bennett of the Hall County Sheriff's Office accompanied the confidential informant to this meeting.  After introducing Inspector Bennett to Montano, the confidential informant left the scene.  Montano told Inspector Bennett he wished to obtain .38 caliber revolvers, 9 mm pistols, and .380 caliber pistols.  Further, Montano informed Inspector Bennett he wished to exchange methamphetamine for the guns.  Inspector Bennett agreed to the

---

[1]Montano formally claimed a Fifth Amendment due process violation in his motion for leave to file his untimely § 2255 motion.  Within this pleading, however, Montano clearly asserts his actual innocence of the § 924(c) conviction.

methamphetamine-for-guns deal and stated he would inform Montano when the guns were available.

On April 23, 1998, Inspector Bennett met Montano in the same Gainesville, Georgia parking lot and allowed Montano to inspect eleven firearms. Inspector Bennett advised Montano that he wanted one-quarter pound of methamphetamine, and would pay for the difference between gun value and drug value with cash. Montano then informed Inspector Bennett he would exchange the one-quarter pound of methamphetamine for the eleven guns and $1650.00 in cash. After striking this deal, Montano left to obtain the methamphetamine, and Inspector Bennett went to arrange for the additional cash. Approximately one hour later, the two men met actually to complete the transaction. Once Montano produced the quarter-pound of methamphetamine, he was immediately arrested. Montano never took possession of the firearms. A search of his vehicle revealed additional supplies of methamphetamine. Montano was arrested with approximately 117.2 grams of methamphetamine in his possession, the quarter-pound (110 grams) involved in the drugs-for-guns transaction, as well as 7.2 additional grams of methamphetamine found in his car. Montano's presentence report also reveals that he was involved in a 111.1 gram cocaine transaction on October 20, 1997, a 25.9 gram methamphetamine transaction on January 28, 1998, and the sale of a

4

firearm on March 31, 1998.

Montano was indicted on May 28, 1998 on five counts:[2] conspiring to possess methamphetamine and cocaine hydrochloride with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846; knowingly and intentionally possessing cocaine hydrochloride on or about October 20, 1997 with intent to distribute in violation of 21 U.S.C. § 841(a)(1); two counts of knowingly and intentionally possessing methamphetamine on or about January 28, 1998 and April 23, 1998 with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and using and carrying a firearm during and in relation to a drug trafficking crime–the April 23, 1998 possession of methamphetamine–in violation of 18 U.S.C. § 924(c). On July 24, 1998, Montano entered into a plea agreement in which he pled guilty to counts seven and eight of the indictment: possession of methamphetamine with intent to distribute on or about April 23, 1998, and use of a firearm during and in relation to that drug trafficking crime. As part of this plea agreement, Montano waived his rights under 18 U.S.C. § 3742 to appeal his sentence[3] and agreed to cooperate with the government. The government

---

[2]Montano was indicted along with three co-defendants: Ignacio Chavez Mendez (a/k/a "Nacho"), Juan Roberto San Miguel, and Vicente Aguilar-Lopez. Out of the eight counts in the indictment, only five spoke to Montano's own culpable conduct.

[3]Montano did retain the right to appeal an incorrect application of the Sentencing Guidelines, any upward departures not agreed to in the plea agreement, and any incorrect finding

subsequently dismissed the remaining three counts of the indictment pending against Montano. At his October 6, 1998 sentencing, Montano received 45 months' imprisonment on each of the two counts to which he pled guilty, these two sentences to run consecutively. Montano's total sentence was reduced by the district court's granting of the government's motion to reduce sentence pursuant to U.S.S.G. § 5K1.1 for substantial cooperation. Montano was also assessed five years' supervised release on the drug count and three years' supervised release on the gun count, these terms to run concurrently, and a $2,000 fine.

Montano's appeal presents us with a procedural question: Can Montano bring his § 2255 motion to set aside his § 924(c) conviction and sentence more than one year after that conviction became final, or is that motion now procedurally barred? As Montano recognized in his motion to the district court, 28 U.S.C. § 2255, ¶ 6 places a one-year period of limitations on the filing of motions to vacate sentence under § 2255. The statute provides:

> A 1-year period of limitation shall apply to a motion under this
> section. The limitation period shall run from the latest of–
> **(1)** the date on which the judgment of conviction becomes final;
> **(2)** the date on which the impediment to making a motion created by
> governmental action in violation of the Constitution or laws of the
> United States is removed, if the movant was prevented from making a
> motion by such governmental action;

of fact.

**(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
**(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255, ¶ 6. The parties do not dispute that Montano's § 2255 motion was filed more than one year after the date upon which the judgment became final.[4] Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). A defendant cannot overcome this procedural bar unless he can demonstrate a cause for this default and show actual prejudice suffered as a result of the alleged error. *Id.* In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Montano contends that he is actually innocent of the

---

[4]Further, Montano has presented no evidence that the other subparts of § 2255, ¶ 6 apply to the facts of his case.

7

§ 924(c) conviction and contends this actual innocence provides an exception to the one-year filing requirement under § 2255, ¶ 6.[5]  In order to determine whether Montano can surmount the procedural bar to the filing of his § 2255 petition, then, we must first examine the merits of Montano's underlying claim to determine if he is actually innocent of the crime to which he pled guilty:  use of a firearm during a drug transaction in violation of § 924(c).

I.  "Use" of a Firearm

In *Smith v. United States*, 508 U.S. 223, 241 (1993), *aff'g* 957 F.2d 835 (11th Cir. 1992), the Supreme Court affirmed our holding that bartering guns to obtain drugs was "use" of a firearm within the meaning of 18 U.S.C. § 924(c).[6]  In

---

[5]Montano also claims that this filing requirement should be equitably tolled due to his difficulties with the English language.  Montano claims that his attorney was either ignorant or ineffective in failing to challenge the § 924(c) conviction, and that his language difficulties prohibited him from timely discovering this challenge on his own.  We find, however, that Montano has not shown such "extraordinary circumstances" as to justify equitable tolling of the one-year filing requirement in § 2255, ¶ 6.  *Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)); *see also Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (finding that attorney negligence or mistake does not justify equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (holding that inability to read and speak English is not in itself a sufficient basis for equitably tolling a failure to meet § 2244(d)(1) requirements).

[6]Section 924, as it appeared at the time of Montano's 1998 conviction and sentence, provides in pertinent part:
> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of

8

*Smith*, the petitioner traveled to Florida hoping to buy cocaine to resell for a profit. *Id*. at 225. While in Florida, Smith met with an undercover officer and offered to trade his automatic MAC-10 firearm for two ounces of cocaine. *Id*. at 225-26. The undercover officer agreed to the deal and left to obtain the cocaine. *Id*. at 226. Smith did not wait for the officer's return, but rather drove off. *Id*. After a high-speed chase, Smith was arrested with the MAC-10 and a quantity of other weapons. *Id*. Smith was charged with a violation of § 924(c) but argued that "use" of a firearm meant use as a weapon. *Id*. at 227. As Smith only bartered with the weapon, he contended that the statute's prohibitions on "use" of a firearm did not extend to his actions. *See id*. In order to determine whether bartering with a firearm constituted a violation of the statute, the Supreme Court looked to the meaning of "use," defined in various dictionaries as "to convert to one's service," "to employ," "make use of," or "to carry out a purpose or action by means of." *Id*.

---

violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–
(i) be sentenced to a term of imprisonment of not less than 5 years;
(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
(iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
18 U.S.C. § 924(c) (Supp. 1999). At the time of the *Smith* decision, the statute's terms differed slightly; however, any discrepancies between the versions of § 924(c) are immaterial to the analysis at hand.

at 228-29 (citing Webster's New International Dictionary 2806 (2d ed. 1939) and Black's Law Dictionary 1541 (6th ed. 1990)). Using these resources, the Court concluded that in trading a gun for drugs, Smith had clearly derived service from the gun, as it was through utilizing the firearm as an item of barter that Smith was able to secure the drugs he sought. *Id*. *Smith*, then, holds that bartering guns for drugs is "use" of a gun in relation to a drug trafficking offense and a violation of the statute.

The meaning and extent of "use" in § 924(c) was further explored in *Bailey v. United States*, 516 U.S. 137 (1995). In *Bailey*, the court examined whether mere possession of a firearm during a drug transaction was sufficient to constitute "use" of a firearm under § 924(c), or if something more was required. *Id*. at 138-39. The *Bailey* petitioners had guns nearby during drug transactions, but these guns were not fired, brandished, displayed or otherwise actively made part of the drug trafficking transaction. *Id*. at 139-40, 151. The Court determined that mere possession of a firearm during or in relation to a drug transaction was not sufficient to constitute "use" under § 924(c), observing that such a definition would "criminalize 'simple possession with a floating intent to use.'" *Id*. at 144 (quoting *United States v. Bailey*, 36 F.3d 106, 121 (D.C. Cir. 1994) (en banc) (Williams, J., dissenting)). Instead, the Court held that conviction under § 924(c)

10

required a showing that the firearm was actively employed in relation to the drug trafficking offense. *Id*. The *Bailey* opinion was careful to harmonize its holding with *Smith*, however, stating, "[u]nder the interpretation we enunciate today, a firearm can be used without being carried, *e.g.*, when an offender has a gun on display during a transaction, *or barters with a firearm* without handling it." *Id*. at 146 (emphasis added).

> Although [in *Smith*] we declined to limit "use" to the meaning "use as a weapon," our interpretation of § 924(c)(1) nonetheless adhered to an active meaning of the term. In *Smith*, it was clear that the defendant had "used" the gun; the question was whether that particular use (bartering) came within the meaning of § 924(c)(1). *Smith* did not address the question we face today of what evidence is required to permit a jury to find that a firearm had been used at all.

*Id*. at 148. Thus, *Bailey* did not overrule *Smith*'s holding that a guns-for-drugs barter could constitute "use" of a firearm within the meaning of § 924(c); it simply reaffirmed that bartering with a gun to obtain drugs was the kind of active employment of a firearm required by the terms of the statute.

While *Smith* and *Bailey* clarified that the bartering of guns to obtain drugs constituted "use" under § 924(c), the cases do not speak to the converse scenario presented to us by the facts of this case of bartering drugs to obtain guns. While we have not yet considered this precise question, several of our sister circuits have been divided by this issue. In *United States v. Sumler*, 294 F.3d 579, 583 (3d Cir.

11

2002), the Court of Appeals for the Third Circuit upheld a § 924(c) conviction for bartering drugs for guns, stating that the *Smith* and *Bailey* decisions defining "use" to include "barter" foreclosed any other resolution. Beyond *Smith* and *Bailey*'s equation of use and bartering, the *Sumler* opinion also cited the specific facts of the case as strong motivation for adopting the majority opinion. The *Sumler* defendant actively solicited the drugs-for-guns swap. *Id*. Moreover, the drugs-for-guns transaction was conducted by two private individuals, and thus no whisper of government influence or entrapment colored the transaction. *Id*. For all these reasons, the Third Circuit felt that the defendant's request for the guns constituted "use" of a firearm in relation to a drug trafficking crime. *Id*. Similarly, in *United States v. Cannon*, 88 F.3d 1495, 1500 (8th Cir. 1996), the defendants traded drugs for guns and cash. The Court of Appeals for the Eighth Circuit upheld the § 924(c) convictions, finding that any differences between trading guns for drugs and trading drugs for guns to be "a distinction without a difference" as "'use' certainly includes . . . bartering." *Id*. at 1509 (quoting *Bailey*, 516 U.S. at 148). The Court of Appeals for the Fifth Circuit also reached the same conclusion as the Eighth and Third Circuits in *United States v. Ulloa*, 94 F.3d 949 (5th Cir. 1996), holding that the firearms were actively employed "because they were an 'operative factor' in the drug trafficking offenses: [the defendant] required that he

12

be furnished firearms in exchange for his drugs." *Id.* at 956; *see also United*

*States v. Zuniga*, 18 F.3d 1254, 1259 (5th Cir. 1994) (Fifth Circuit opinion

predating *Bailey,* holding that trading drugs for guns constituted use of a firearm

in relation to a drug trafficking crime).[7]

Ranged against this line of cases is a set of opinions which has found that

bartering drugs for guns does not violate § 924(c). *United States v. Westmoreland*,

122 F.3d 431 (7th Cir. 1997), presented the earliest exposition of this position. In

*Westmoreland*, the Court of Appeals for the Seventh Circuit concluded that

"passively receiving a gun from an undercover agent in payment for drugs cannot

constitute a use under section 924(c)(1)." *Id*. at 435. Like the Supreme Court in

*Smith* and *Bailey*, the Seventh Circuit focused upon the meaning of "use" to reach

this conclusion. *Id*. at 435-36. The *Westmoreland* court likened a bartering

transaction to the cash purchase of that gun. *Id*. Conventional understanding of

the meaning of "use" would embrace the notion that the gun buyer "used" his

money to purchase the firearm. *See id*. The active definitions of "use" expounded

in *Smith* and *Bailey*, however, do not stretch to the converse situation. A seller

---

[7]The Second and Ninth Circuit Courts of Appeal also noted this question. *See United States v. Cox*, 324 F.3d 77, 83-84 (2d Cir. 2003) (declining to answer the issue and resolving on the grounds that the gun was used as collateral and not in barter); *United States v. Ramirez-Rangel*, 103 F.3d 1501, 1506 (9th Cir. 1997) (mentioning that bartering drugs for guns is "use" in context of discussing sentence entrapment).

does not use a buyer's consideration; instead, the act of receiving the buyer's consideration is inherently passive. *Id*. at 436. Utilizing the same logic, the court concluded that while the defendant may well have used his drugs in order to obtain the gun, he could not be said to have used the gun *in that transaction*. *Id*. As the defendant was immediately arrested upon receipt of that gun, the Seventh Circuit found that the gun was never anything more than an "inert presence" to the transaction and reversed the § 924(c) conviction. *Id*.

The Sixth Circuit also reached the conclusion that passive receipt of a firearm in a drugs-for-guns transaction did not constitute a violation of § 924(c) in *United States v. Warwick*, 167 F.3d 965 (6th Cir. 1999). In *Warwick*, a defendant sought to sell marijuana for a specific sum of money to an undercover officer. *Id*. at 975. That officer advised the defendant that he did not have the full amount of money on him, but suggested that he give the defendant a shotgun to make up for the shortfall in cash. *Id*. The court noted that the particular facts of the case suggested that the government and not the defendant introduced the firearm into the transaction. *Id*. at 976. Focusing on the passive nature of the defendant's interaction with the firearm, the Sixth Circuit employed the ordinary meaning of "use" as defined in *Bailey* and *Smith* and concluded that receipt of a firearm in a drug transaction did not constitute a violation of § 924(c). *Id*. at 975-76.

14

Most recently, the Court of Appeals for the District of Columbia has weighed in on this debate in *United States v. Stewart*, 246 F.3d 728, 733 (D.C. Cir. 2001), also concluding that bartering drugs for guns does not constitute use of a firearm under § 924(c). In *Stewart*, the defendants asked two undercover officers if they could obtain two guns for $500. *Id.* at 729. The officers and defendants eventually agreed to exchange 250 grams of crack for $7,000 and a bag of guns. *Id.* The defendants were arrested immediately after receipt of the guns. *Id.* The *Stewart* court, too, turned to the definition of "use" set forth in *Smith* and *Bailey* and stated,

> [W]e cannot see how a defendant "uses" a gun when he receives it during a drug transaction. The recipient has not employed the gun, availed himself of the gun, or derived any service from the gun by simply trading his drugs for it. Indeed, nothing in a person's acceptance of a gun embodies the active employment demanded by the Court in *Bailey*. We therefore agree . . . that a person who receives a gun in a trade for drugs has not used the gun in violation of § 924(c).

*Id.* at 731 (internal citations omitted). Moreover, the *Stewart* opinion dispensed with the entrapment or inducement issue raised in *Warwick*, stating that the issue of who first suggested bartering drugs for guns was irrelevant to the legal question; "[u]nder either scenario, the drug dealer has not used the gun within the meaning of § 924(c)." *Id.* at 732.

15

We find the minority position persuasive.  While we recognize that the *Bailey* and *Smith* Courts did interpret bartering to be an active employment of a firearm within § 924(c), this language must be read in its proper context.  *Smith* did not hold that bartering, in general, constituted "use" of a firearm; instead, the opinion states that bartering *with a firearm* constitutes use.  *See* 508 U.S. at 237, 241.  Given that bartering with a firearm constitutes an employment of that gun by the defendant to achieve his own purposes, it is unsurprising that *Bailey* was able to fold the particular facts of *Smith* within its "active employment" definition of use.  In the instant case, however, the defendant did not bargain *with* his firearm, he bartered drugs in order to obtain that firearm.  The facts of Montano's case, then, may be distinguished from the holdings of *Smith* and *Bailey*, and those cases do not foreclose Montano's present claim of actual innocence.

Furthermore, the facts show that Montano was never in a position to use, or actively employ, the eleven firearms for which he traded methamphetamine.  The firearms were never in Montano's possession, either actually or constructively.  Montano was allowed to look at the firearms before agreeing to the transaction, but he did not keep the firearms at that time; indeed, as Montano had not tendered his consideration, the guns were still in the possession of the government.  After passively viewing the guns, Montano left the firearms in the control of Inspector

16

Bennett so that Montano could obtain the methamphetamine and complete the deal. Upon his return, Montano again never had contact with any of the firearms, as he was arrested immediately after producing the methamphetamine.

Moreover, as in *Stewart*, the record does not show that Montano employed the guns, availed himself of the guns, derived service from the guns, or received any other benefit from the guns that could be considered "active employment." In other words, Montano had nothing resembling dominion or control over the firearms present at the drug transaction, and thus no means to "convert to one's service," "to employ," "make use of," or "to carry out a purpose or action by means of" the guns. *Smith*, 508 U.S. at 229; *cf. United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998) (finding a defendant did not have dominion or control over drugs or gun found in a car when he did not own the car, was not driving the car, and was simply a passenger riding in the back seat). In these factual circumstances, the only means by which Montano could have "used" the gun, as contemplated by the statute, would be to make the government agents present at the final transaction somehow comply with his wishes; however, it is impossible, of course, for Montano to conspire with the government. *United States v. Lively*, 803 F.2d 1124, 1126 (11th Cir. 1986) (citing *United States v. Richardson*, 764 F.2d 1514, 1529 (11th Cir. 1985)). Accordingly, this court must conclude that

17

Montano was not "using" a gun within the meaning of § 924(c).

II.  Procedural Obstacles

While we have concluded that Montano did not violate § 924(c) by trading methamphetamine for firearms, that determination does not bring an end to the inquiry into his ability to file a procedurally-defaulted § 2255 motion.  Actual innocence is not itself a substantive claim, but rather serves only to lift the procedural bar caused by Appellant's failure timely to file his § 2255 motion. *Bousley v. United States*, 523 U.S. 614, 622.  In *Jones v. United States*, 153 F.3d 1305 (11th Cir. 1998), we considered what "actual innocence" meant in such a context.  In *Jones*, the defendant had pled guilty to possession of cocaine with intent to distribute in violation of  21 U.S.C. § 841(a)(1), and using and carrying a firearm in relation to a drug felony in violation of 18 U.S.C. § 924(c).  *Id*. at 1306.  Like Montano, the *Jones* defendant alleged that his conviction under § 924(c) should have been set aside because the evidence did not support his guilty plea in light of *Bailey*.  *Id*. at 1307.  As he had not filed direct appeal of his sentence, the *Jones* defendant was required to show either cause and prejudice or actual innocence to avoid the procedural default caused by the failure to appeal.  *Id*.  We held that cause and prejudice was not available  to the *Jones* defendant as a means

18

of avoiding procedural default but recognized that actual innocence might still be a viable option, and we remanded the case to the district court for further consideration. *Id*. at 1308.

We noted in *Jones*, however, that simply showing factual innocence of the § 924(c) claim was not enough to demonstrate actual innocence. *Id*.

> Moreover, in assessing Appellant's claim of actual innocence, the district court should heed the Supreme Court's instruction that "[i]n cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges."

*Id*. ( quoting *Bousley v. United States*, 523 U.S. at 624). Only if Appellant can meet the requirements for proving his actual innocence will he "then  be entitled to have his defaulted claim of an unintelligent plea considered on its merits." *Bousley*, 523 U.S. at 624. Accordingly, simply determining that Montano did not "use" the firearms purchased in the drugs-for-guns transaction does not establish Montano's actual innocence of the crime.[8]

We follow the same procedure here as was outlined in *Jones*. As Appellant

---

[8]We recognize that the procedural default at issue in *Jones*, failure directly to appeal, is different than the statute of limitations default faced by Montano. However, cases considering whether "actual innocence" excuses untimely filing of a § 2255 motion have used the same *Jones* definition of "actual innocence," taken from *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). *See Wyzykowski v. Dep't of Corrections*, 226 F.3d 1213, 1219 & n.7 (11th Cir. 2000); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000). Accordingly, we find that the standards set forth in *Jones* are appropriate in the instant case.

has pled guilty to the firearms charge, he is seen as contending that the plea was not knowingly tendered, as was the case in *Bousley v. United States*. At this stage, we do not have the plea colloquy or any other evidence concerning what the Appellant knew about the possibility that § 924(c) would be construed as we have done. We assume at this stage that the plea was unknowing unless the contrary be shown on remand.

This is a case where the Government has foregone several more serious charges in the course of plea bargaining. In pleading guilty to possession with intent to distribute methamphetamine as well as the firearm charge, Montano avoided trial on three other counts of the indictment: conspiring to possess methamphetamine and cocaine hydrochloride with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846; knowingly and intentionally possessing cocaine hydrochloride on or about October 20, 1997 with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and knowingly and intentionally possessing methamphetamine, on or about January 28, 1998, in violation of 21 U.S.C. § 841(a)(1). As already discussed, in order to avail himself of a claim of actual innocence, Appellant must demonstrate under *Bousley* and *Jones* that he is innocent of all more serious charges foregone. As we said in *Jones*, the Appellant bears the burden of establishing that, in light of all the evidence available to

support the foregone charges, it is more likely than not that no reasonable juror would have convicted him. *Bousley,* 523 U.S. at 623. Moreover, the Government must be permitted to introduce any admissible evidence of Appellant's guilt, whether or not that evidence was presented in the plea colloquy, or even would have been offered before our decision today. *See id.*

For all the reasons set forth above, this case is REVERSED and REMANDED to the district court for further proceedings in accordance with this opinion.