# United States Court of Appeals
## For the First Circuit

No. 03-1477

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE COTTO, JR.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Selya, Lynch, and Lipez,
Circuit Judges.

Robert A. O'Meara for appellant.
John A. Capin, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

August 2, 2006

**LYNCH, Circuit Judge**.  The primary issue in this appeal is whether one who barters drugs for firearms has "used" the firearms within the meaning of 18 U.S.C. § 924(c)(1)(A), which provides for a mandatory five-year sentence for using a firearm "during and in relation to any . . . drug trafficking crime."  The circuit courts have split rather closely on this question.  We hold that bartering drugs for firearms constitutes "use" of the firearms under § 924(c)(1)(A).  We affirm the defendant's conviction and sentence.

## I.

We recount the facts in the light most favorable to the verdict.  United States v. Sanchez-Berrios, 424 F.3d 65, 71 (1st Cir. 2005).

The defendant, Jose Cotto, Jr., was a heroin dealer.  One of his customers was Amanda Tew, a teenager who in early 1999 was living with her grandparents.  Tew paid Cotto by giving him guns she stole from her grandparents' basement, where her grandfather stored them.  From the summer of 1999 until the spring of 2000, Cotto engaged in more than twenty heroin-for-guns exchanges with Tew.  Tew testified that in return for her grandfather's guns, Cotto never gave her cash or anything other than heroin.

Cotto generally paid Tew a "brick" of heroin for each gun.  Each brick consisted of fifty postage-stamp-sized bags containing a pinch-of-salt's worth of heroin.  Cotto's typical

-2-

practice was to give Tew two to four "bundles" of heroin (each bundle containing ten bags) after inspecting and taking delivery of a gun. Tew would come back later for the remaining bundles. Cotto always paid the first installment the same day he received the gun, but only after examining the gun.

In the spring of 2000, Tew was arrested for possession of heroin; she eventually agreed to cooperate with what was then the Bureau of Alcohol, Tobacco, and Firearms (ATF). She telephoned Cotto and spoke with him on July 10, 2000, in a recorded conversation. Cotto asked her whether she had gotten any more guns, and he specifically expressed an interest in handguns. Tew told Cotto she could get him "whatever [he] want[ed]" from a "guy." The two agreed to speak again the next day.

In a recorded conversation on the morning of July 11, Tew told Cotto she had one MAC-11 and two .380-caliber handguns, and that she wanted "a couple" of bricks for the guns. The guns were actually supplied by the ATF. Cotto and Tew made plans to meet that day at noon behind a particular store.

When Cotto arrived at the agreed-upon parking lot, Tew was already there, with one MAC-11 handgun and two .380-caliber handguns in the trunk of her car. The ATF had them under surveillance. Cotto got into Tew's car and asked her where the guns were. The two got out of her car, and Tew opened the trunk, allowing Cotto to see the guns. After inspecting the guns, Cotto

-3-

put them in the trunk of his own car. He was arrested moments later, without having yet given anything to Tew. He had two bundles of heroin and $38 in cash with him.

Cotto was charged in a superseding indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of using a firearm during and in relation to a drug trafficking crime, and possessing a firearm in furtherance of such crime, in violation of 18 U.S.C. § 924(c)(1). Both counts were based on the events of July 11 and both charged Cotto's involvement with three specific guns (the MAC-11 and the two .380-caliber handguns).

Cotto pled guilty to the felon-in-possession count and went to trial on the § 924(c) count. His defense was that he was not going to exchange heroin for firearms on July 11. Although Cotto did not testify, the defense presented evidence that Cotto abused heroin and that the heroin he had with him was only for personal use. The jury returned a guilty verdict.

The court sentenced Cotto to 84 months of imprisonment on the felon-in-possession count and 60 months on the § 924(c) count, to be served consecutively, for a total of 144 months' imprisonment. Cotto now appeals.

II.

A.          Challenge to Conviction

Cotto challenges his conviction only on the § 924(c) count.  He argues that the evidence was insufficient to support conviction on that count.  We review this preserved claim de novo, asking whether the evidence, if viewed in the light most favorable to the prosecution, would allow a rational jury to find all elements of the crime beyond a reasonable doubt.  United States v. Hall, 434 F.3d 42, 49 (1st Cir. 2006).

The statute in question provides that "any person who, during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," is subject to at least five years' imprisonment, "in addition to the punishment provided for [the] . . . drug trafficking crime."  18 U.S.C. § 924(c)(1)(A)(i).  Only the "use" provision is at issue here.[1]

Cotto's primary argument is that bartering drugs for firearms cannot constitute "use" of the firearms under § 924(c).  He acknowledges that the Supreme Court has held that bartering in the other direction -- that is, exchanging guns in order to obtain drugs -- does constitute "use" of the firearms.  The Court so held

_____

    [1] Cotto was not charged under the "carry" provision.  Although the § 924(c) count in the indictment did charge "possession in furtherance," the government concedes that this provision dropped out of the case when it was not included in the jury instructions or verdict slip.

-5-

in Smith v. United States, 508 U.S. 223 (1993). There, the Court reasoned that "[b]y attempting to trade his [gun] for the drugs, [the defendant] 'used' or 'employed' it as an item of barter to obtain cocaine; he 'derived service' from it because it was going to bring him the very drugs he sought." Id. at 229. Cotto notes, though, that the Supreme Court soon returned to the issue of what constitutes "use," holding that "§ 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Bailey v. United States, 516 U.S. 137, 143 (1995).

Four circuit courts have treated a drugs-for-firearms barter as "use." See United States v. Sumler, 294 F.3d 579, 580 (3d Cir. 2002); United States v. Ramirez-Rangel, 103 F.3d 1501, 1506, 1509 (9th Cir. 1997); United States v. Ulloa, 94 F.3d 949, 955-56 (5th Cir. 1996); United States v. Cannon, 88 F.3d 1495, 1508-09 (8th Cir. 1996). Two circuits can be viewed as leaning that way. See United States v. Cox, 324 F.3d 77, 82-84 (2d Cir. 2003) (holding that accepting a gun as collateral for the purchase price of drugs is "use"); United States v. Harris, 39 F.3d 1262, 1269 (4th Cir. 1994) (holding, post-Smith but pre-Bailey, that

supplying someone with crack in exchange for aid in obtaining a gun is "use").[2]

The government exaggerates in claiming the support of "the overwhelming weight of authority."  In fact, four circuits have adopted Cotto's interpretation.  See United States v. Montano, 398 F.3d 1276, 1282-84 (11th Cir. 2005) (per curiam); United States v. Stewart, 246 F.3d 728, 731-33 (D.C. Cir. 2001); United States v. Warwick, 167 F.3d 965, 975-76 (6th Cir. 1999); United States v. Westmoreland, 122 F.3d 431, 434-36 (7th Cir. 1997).

We hold that bartering drugs in order to obtain firearms is "use" of the firearms.  In doing so, we recognize that Cotto's position is not without merit.  His interpretation of the word "use" has some force given the common understanding of that term: while it is easy to see how he "used" the heroin to get the guns, it is somewhat less natural to say that he "used" the guns as well.[3]  See Stewart, 246 F.3d at 731; Westmoreland, 122 F.3d at 435-36.  Were we writing on a blank slate, we might well be

---

[2] The Fourth Circuit has, in several unpublished post-Bailey decisions, reaffirmed Harris and held that trading drugs for guns constitutes "use."  See, e.g., United States v. Belcher, No. 98-4845, 1999 U.S. App. LEXIS 30693, at *3 (4th Cir. Nov. 29, 1999) (per curiam) (unpublished).

[3] The government attempts to distinguish several of the cases on which Cotto relies on the ground that they involved merely passive acceptance of guns, as opposed to the defendant's deliberate activity here.  Our holding does not turn on this distinction.

inclined to say, based on the most natural reading of the statute, that Cotto did not "use" the guns by bartering for them.

But we do not write on a blank slate. First, Smith controls here. In Smith, the Court stated that "[b]oth a firearm's use as a weapon and its use as an item of barter fall within the plain language of § 924(c)(1), so long as the use occurs during and in relation to a drug trafficking offense." 508 U.S. at 240. The Court employed a very broad understanding of what it means for a firearm to be "used . . . as an item of barter or commerce." Id. at 234. The Court's examples included not only variations on delivery, but also multiple instances of receipt. See id. at 234 & n.* (listing several offenses involving receipt as examples of "offense[s] involv[ing] use as an item in commerce"); see also id. at 235 (referring generally to offenses in which firearms "function as items of commerce"). We are not free to disregard Smith, which we view as controlling.

Nor does Bailey compel us to distinguish Smith. To the contrary, Bailey was careful to reaffirm Smith, stating that "[t]he active-employment understanding of 'use' certainly includes . . . bartering . . . a firearm." 516 U.S. at 148; see also id. at 147-48 (explaining that Smith's recognition that "use" includes "use as an item of barter" is consistent with the Bailey holding). Cotto "used" firearms within the active-employment meaning of Bailey. That he received guns does not mean he was passive with

respect to them. He "required that he be furnished firearms in exchange for his drugs," Ulloa, 94 F.3d at 956, and he accepted the guns as a way of "clos[ing] the drug transaction," Cox, 324 F.3d at 84, thereby making the guns an operative factor in the drug trafficking offense. Cf. United States v. Frederick, 406 F.3d 754, 764 (6th Cir. 2005) (stating in a possession-in-furtherance case that "a defendant's willingness to accept possession of a gun as consideration for some drugs he wishes to sell does promote or facilitate that illegal sale," and that "[i]f the defendant did not accept possession of the gun, and instead insisted on being paid fully in cash for his drugs, some drug sales -- and therefore some drug trafficking crimes -- would not take place") (internal quotation marks and citation omitted).

Even if Supreme Court precedent did not require the interpretation that we adopt here, there are other reasons for rejecting Cotto's position based on a reading of the statutory language. First, our reading is consistent with Congress' employment of the word "use" in other parts of § 924. In Smith, the Court looked at the ways in which one can "use" a firearm under § 924(d)(1) and (d)(3), and it reasoned that "using a firearm" should have the same meaning under § 924(c)(1). See 508 U.S. at 233-36. Likewise, in Bailey, the Court referred to its approach in Smith and again looked to § 924(d) for assistance in interpreting § 924(c). See 516 U.S. at 146. Applying that method here, we note

that under § 924(d), a gun can be "used" in an offense consisting of receipt of the gun.[4] This supports treating the receipt of guns in a drugs-for-guns barter as "use" of the guns under § 924(c). See Cannon, 88 F.3d at 1509.

Finally, the rationale of § 924(c) supports our interpretation. As the Court observed in Smith, "[w]hen Congress enacted the current version of § 924(c)(1), it was no doubt aware that drugs and guns are a dangerous combination." 508 U.S. at 240. "The fact that a gun is treated momentarily as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon." Id. That is so whether the defendant transfers or receives the gun. Just as the Supreme Court did not think Congress "intended courts and juries applying § 924(c)(1) to draw a fine metaphysical distinction between a gun's role in a drug offense as a weapon and its role as an item of barter," id., we do not think it intended to draw a distinction between bartering with a firearm and bartering for a firearm.

---

[4] Under § 924(d)(1), any firearm "intended to be used" in any offense referred to in § 924(d)(3) is subject to seizure and forfeiture. Section 924(d)(3), in turn, lists offenses consisting of the receipt of a firearm, including those described in 18 U.S.C. § 922(a)(1)(A) (unlicensed importing, dealing in, or receiving firearms), § 922(a)(3) (unlicensed receipt of firearms obtained out of state), § 922(j) (receipt and bartering of stolen firearms), § 922(l) (importation of firearms or receipt of imported firearms), § 922(n) (receipt of firearm by person under indictment), and § 924(b) (receipt of firearm with intent to commit a felony).

Cotto's fallback argument is that, even if a drugs-for-firearms barter could constitute "use," there was no such barter here, because he had not given Tew any heroin before he was arrested. The fact that Cotto was arrested by ATF agents before he could distribute heroin to Tew is immaterial to whether, under § 924(c), there was "use" during and in relation to a drug trafficking crime. There was ample evidence that Cotto possessed heroin with the intent to distribute it, which is a drug trafficking crime.[5]  See 21 U.S.C. § 841(a)(1).  And there was ample evidence that he actively employed firearms by making them an operative factor in that crime, and that he did so during and in relation to that crime. Cotto required Tew to give him guns in exchange for heroin, and he possessed heroin with the intent to distribute it to Tew in exchange for the guns. By the time he was arrested, he had actually taken delivery of the guns, which he had made integral to the deal and to his own possession with intent to distribute. Nothing turns on whether he had paid for them yet.[6]

_____

[5] Cotto argues that the heroin he had with him was for personal use. But there was ample evidence from which the jury could find that Cotto intended to buy three firearms from Tew at a price of two bricks of heroin and that the two bundles of heroin were meant to serve as Cotto's usual first installment.

[6] Indeed, Smith upheld "use" liability and based its holding on "the exchange of a gun for narcotics," 508 U.S. at 225, even though neither gun nor drugs had changed hands and the defendant had only "attempt[ed] to trade his [gun] for the drugs," id. at 229; see also id. at 230 (stating that "petitioner 'used' his [gun] in his drug trafficking offense by trading it for cocaine").

B.      Challenge to Sentence

Cotto challenges his sentence on the felon-in-possession count. His objection is twofold: first, that his offense level under the Sentencing Guidelines was increased based on judicial factfinding by a preponderance of the evidence, and second, that the district court was unable to take full account of the factors set forth in 18 U.S.C. § 3553(a). As we have explained, the error under United States v. Booker, 543 U.S. 220 (2005), "is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system." United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005).

Cotto concedes that the Booker error is unpreserved, so we apply plain error review.[7] Id. Cotto must "point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to [him] under the new 'advisory Guidelines' Booker regime." Id. This test

---

[7] Cotto argues that the judicial factfinding and the then-mandatory status of the Guidelines were structural errors warranting automatic reversal. We have repeatedly rejected both arguments. Neither judicial factfinding nor having been sentenced under mandatory Guidelines warrants automatic reversal. See Sanchez-Berrios, 424 F.3d at 80; Antonakopoulos, 399 F.3d at 75, 79-80; see also Washington v. Recuenco, 126 S. Ct. 2546, 2553 (2006).

"is not met by the mere assertion that the court might have given the defendant a more favorable sentence."  Id. at 80.

Cotto points to two specific factors here that, he says, warrant a remand for resentencing.  First, the district judge said that "the double-counting issue bothers me."  The court was merely explaining why it chose not to impose a particular enhancement sought by the government, not indicating that it would have imposed a lesser sentence if not for the mandatory Guidelines.  Indeed, the court could have sentenced Cotto more leniently by selecting a sentence at the bottom of the Guidelines range; instead it chose a middle-of-the-range sentence on the felon-in-possession count.  Second, Cotto argues, there is a newly available sentencing consideration: his drug addiction.  The court took this factor into account at sentencing[8] and, where it easily could have selected a lower sentence within the range but chose not to, we are not persuaded that there is a reasonable probability that it would impose a more lenient sentence on remand.  As to Cotto's general argument that he is entitled to a Booker remand so that the district court can take greater account of the § 3553(a) factors, it is not enough merely to suggest that the § 3553(a) factors "might well have persuaded" the court to impose a lower sentence. See Sanchez-Berrios, 424 F.3d at 80.

---

[8] The court recommended, on Cotto's request, that Cotto be given a spot in a drug treatment program in prison.

-13-

III.

Cotto's conviction and sentence are <u>affirmed</u>.