NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No.  09-3410
_____

UNITED STATES OF AMERICA

v.

CALVIN LEE DYE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 08-cr-00384)
District Judge:  Honorable Alan N. Bloch
_____

Submitted Under Third Circuit LAR 34.1(a)
October 22, 2010

Before:  HARDIMAN, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

Filed: October 22, 2010
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

 Calvin Lee Dye appeals from his judgment of conviction and sentence.  We will

affirm.

I.

Because we write for the parties, we recount only the essential facts.

A.

From September 4, 2008 through October 2, 2008, Dye participated in twelve instant message conversations with undercover police officer Kevin Grippo, who posed as a 14-year-old girl named "Jess H."[1] Upon seeing Jess in a "Yahoo Messenger" chatroom, Dye initiated the first private conversation. Within seconds, Dye learned Jess's age; within minutes, he received a picture of Jess and started making sexual advances: "wish u were 18 . . . so we cou[l]d play . . . what if i wanted to kiss." After it was established that Jess might be willing to "play" or "kiss," the discussion transitioned to when, where, and how the two could meet in person. By the end of the 54-minute-long conversation, Dye had requested "a nude shoot," asked Jess "do u swallow" and "u take it in the ass too?," informed the putative minor that she "got [Dye] so hard right now," and then informed her that he would "have to learn [the girl] then do [her] really good."

In each of the subsequent eleven chats between the two, Jess initiated online contact with Dye. In each chat, however, Dye raised the subject of sex and meeting to have sex. The chats grew increasingly graphic. At one point, Dye alluded to Jess

---

[1] We refer to Grippo/"Jess H." as simply "Jess" because, from Dye's perspective, the person with whom he was planning to have sex was the 14-year-old girl, Jess. Under § 2422(b), an undercover officer posing online as a minor is treated as a minor. *United*

2

bringing a friend to participate in their sexual rendezvous, and later Dye proposed

"do[ing] the mother daughter thin[g]" by involving Jess's mother. On three occasions,

Dye went so far as to masturbate for Jess via webcam. Throughout the conversations,

Dye made very clear to Jess what he intended to do with (or to) her, promising her time

and again that she would enjoy it. One specific activity that Dye proposed during their

sixth conversation was bringing his computer and camera in order to take "naked and

sex" pictures and videos.

Finally, after weeks of preparation and logistical planning, on October 3, 2008,

Dye traveled from Ohio to a CoGo's in Mt. Pleasant, Pennsylvania intending to pick up

the 14-year-old, take her to a hotel or to her parents' house, have sex with her, and take

photographs and videos of it. When Dye arrived at the CoGo's, two Mt. Pleasant police

officers and a young looking 21-year-old decoy were waiting for him. After circling the

CoGo's twelve to fifteen times, Dye pulled into the parking lot and waved for the decoy

to get into his car. She did not, so Dye drove away and was promptly arrested. The items

in his car included a digital camera and a newly-purchased memory card, as well as a

webcam, a box of condoms, and several sex toys.

Dye waived his *Miranda* rights and admitted that he traveled from Ohio to have

---

*States v. Tykarsky*, 446 F.3d 458, 468–69 (3d Cir. 2006) *cert. denied*, 129 S. Ct. 1929 (Apr. 9, 2009).

3

sex with Jess with plans to photograph it. He also admitted that his home computer contained child pornography, which the police found while searching Dye's house.

B.

Dye was tried and convicted on one count of using his computer—a "means of interstate or foreign commerce"—to "persuade[], induce[], entice[], or coerce[]" a girl under the age of 18 to engage in sexual activity, 18 U.S.C. § 2422(b), and "traveling in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct," 18 U.S.C. § 2423(b). At trial, Dye admitted to traveling interstate to have sex with Jess, but he challenged the sufficiency of the evidence supporting the charge, arguing that Jess was a seductress who had persuaded, induced, and enticed Dye, not the other way around. The jury rejected this theory and found Dye guilty on both counts.

The District Court calculated Dye's Sentencing Guidelines range as 235 to 293 months, accounting for a Guideline cross-reference—which increased the offense level from 34 to 38—because the crime involved "causing, transporting, permitting or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG § 2G1.3(c)(1). The Court then analyzed the 18 U.S.C. § 3553(a) sentencing factors, determined that "under the circumstances of this case, the Guidelines provide too severe a sentence," and imposed a sentence of 180 months with 10 years of supervised release. The sentence was

4

60 months above the 10-year statutory minimum and 55 months below the bottom of the Guidelines range. This appeal followed.[2]

## II.

## A.

Dye first contends that the evidence is insufficient to support the jury's guilty verdict on the charge of persuading, inducing, enticing, or coercing a minor to engage in sexual activity. We apply a "deferential standard in determining whether a jury's verdict rests on sufficient evidence." *United States v. Ozcelik*, 527 F.3d 88, 93 (3d Cir. 2008). We have stated that "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high," *United States v. Iglesias*, 535 F.3d 150, 155 (3d Cir. 2008), and "a decision to reverse conviction on grounds of insufficiency should be confined to cases where the prosecution's failure is clear," *Gov't of V.I. v. Brathwaite*, 782 F.2d 399, 404 (3d Cir. 1986). The evidence is reviewed in the light most favorable to the Government, and we will uphold the verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ozcelik*, 527 F.3d at 93 (emphasis in original) (quoting *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir.

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291, which grants "courts of appeals . . . jurisdiction of appeals from all final decisions of the district courts of the United States." Dye also had the right to appeal his sentence under 18 U.S.C. § 3742(a)(1).

1996)).

Dye's contention—that the Government failed to prove that he attempted to persuade, induce, entice, or coerce Jess into sexual activity—was best summarized in his own attorney's closing argument: "Officer Grippo's role playing made it clear from the outset that he was ready to go. He was hot to trot." We reject this attempt to blame the putative victim.

The evidence is overwhelming that Dye did, in fact, attempt to commit the offense—that is, he had the requisite intent, and he took "a substantial step toward" its commission. *United States v. Nestor*, 574 F.3d 159, 161 (3d Cir. 2009) *cert. denied*, 130 S. Ct. 1537 (Feb. 22, 2010). Despite Dye's efforts to convince us that his relationship with what he thought was a 14-year-old girl was something other than what it was (*i.e.*, they "talked together as boyfriend and girlfriend"), the chat logs speak for themselves, and they speak volumes. Dye sent the first private message initiating contact with Jess. Dye requested a picture of the 14-year-old girl. Dye was the first to allude to sexual activity. Dye was the first to imply that the two should meet, and Dye repeatedly raised logistical concerns and fears about getting caught. Dye brought up the idea of masturbating on camera, and Dye was the one who actually did so. Dye was the one who offered to bring Jess underwear and a webcam, and Dye repeatedly assured her that she would find their day together pleasurable. Dye drove from Ohio to Mt. Pleasant to

6

consummate the relationship.

The jurors heard Dye's "hot to trot" defense, and they rejected it. The jury's determination is amply supported by the record. Giving the words "persuade," "induce," and "entice" their "ordinary or natural meaning," *Bailey v. United States*, 516 U.S. 137, 145 (1995), it is readily apparent that Dye's conduct qualifies as at least one, if not all three. Additionally, the Government's brief provides lengthy footnotes citing to cases from around the country where courts have found that, as a matter of law, evidence of activity comparable to Dye's is sufficient to uphold a guilty verdict under § 2422(b). We find those cases quite persuasive, especially given that Dye committed numerous acts, any one of which is sufficient evidence of enticement—e.g., exposing himself and masturbating for the minor, promising the minor that sex would be pleasurable, requesting nude photos of the minor, etc.[3]

## B.

Dye also appeals his sentence, arguing that the District Court erred when it applied

---

[3] Dye's "hot to trot" defense is especially troubling because its underlying premise is that it is possible for a 14-year-old child to seduce a 36-year-old man, absolving the man of criminal liability for engaging in, or attempting to talk the minor into engaging in, illicit sexual activity. Dye cites no case law, however, to support the notion that minors— who are, by law, unable to even *consent* to sexual activity, *United States v. Remoi*, 404 F.3d 789, 795 (3d Cir. 2005)—can "ask for it" in such a way that it becomes legally permissible for adults to entice minors into sexual escapades. That "Jess" was actually an

7

a Guidelines cross-reference based on Dye's "causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," which resulted in a four-point increase in Dye's offense level. USSG § 2G1.3(c)(1) (redirecting the sentencing court from § 2G1.3 to § 2G2.1). Our review of the District Court's interpretation of the Guidelines is plenary, and we review the Court's factual findings for clear error. *United States v. Lianidis*, 599 F.3d 273, 278 (3d Cir. 2010).

Dye maintains that the District Court made the following factual errors that resulted in its applying the § 2G1.3(c)(1) cross-reference: (1) Dye did not "seek by notice or advertisement, a minor to engage in sexually explicit conduct," (2) Jess was the first to suggest that Dye bring a camera, (3) Officer Grippo manipulated Dye's Guidelines range, which amounted to "sentencing entrapment" or "sentencing factor manipulation," and (4) Dye did not "engage in sexually explicit conduct for the [primary] purpose of producing a visual depiction of such conduct."

Dye's first claim fails because online instant messages soliciting something from another qualifies as "seeking by notice." Even if Dye did not seek out Jess "by notice," his use of the Internet would constitute some "other method" of contacting her, and so it

undercover officer is irrelevant because we have held that an undercover officer posing as a minor is treated as a minor. *Tykarsky*, 446 F.3d at 468–69.

8

would fall under the catchall phrase in Application Note 5 to § 2G1.3(c)(1). Either way, § 2G1.3(c)(1) is "to be construed broadly," and so it surely covers Dye's sexually-charged instant messages. USSG § 2G1.3, cmt. n.5.

Dye's second and third claims are similarly unavailing. Dye was, at a minimum, predisposed to create visual depictions of Jess naked and having sex, and the evidence supports a finding that Dye actively sought out the opportunity to do so.[4] Dye, not Jess, first brought up the topic of nude pictures thirty-eight minutes into their first conversation, and during their second conversation, he revisited the topic saying, "so wish I could see [yo]ur nude pics."[5] Jess replied that she had none because no one would take any, and Dye then made the first mention of creating visual depictions of Jess: "i could but u can not use them for anyone else lol." A week later, Dye was the first to elaborate on what they should do with the camera: "so was thinking i would bring my computer and

---

[4] We have never recognized the doctrines of "sentencing entrapment" or "sentencing factor manipulation," and we need not do so here because we agree with the District Court that Dye would clearly be unable to meet the elements of either doctrine. *See United States v. Sed*, 601 F.3d 224, 230–31 (3d Cir. 2004); *United States v. Sumler*, 294 F.3d 579, 582 n.1 (3d Cir. 2002), *abrogated on other grounds by Watson v. United States*, 552 U.S. 74 (2007).

[5] Although the chat logs demonstrate that Jess was the first to mention a camera, it was in the context of requesting Dye bring a "webcam" that would allow the two to see each other when they chatted in the future (*i.e.,* "u can bring me a webcam so u can see me when u get back."). Jess made no mention of taking nude photographs or creating pornographic videos with Dye.

9

cam and take some video and pics that ok." When Jess asked what kind of videos and pictures Dye wanted to take, he replied, "naked and sex. . . . nude pics. . . . and video of us doing it." The record therefore supports the District Court's finding that Dye was predisposed to create visual depictions of their sexual encounter.

Finally, Dye's fourth claim fails for two reasons. First, there is no requirement that for a Guideline like § 2G1.3(c)(1) to apply, the relevant conduct must be the primary purpose of the defendant's illegal acts. It is sufficient that creating a visual depiction of Jess was just one of Dye's purposes, as it was in this case. *See, e.g.*, *United States v. Veazey*, 491 F.3d 700, 706–07 (7th Cir. 2007). Second, the District Court did not clearly err in concluding that one of Dye's principal goals was creating visual depictions of Jess. Dye's repeated references to nude photographs, his existing collection of child pornography, and his own use of a camera to film himself masturbating all support the conclusion that photographing and filming Jess was at least a significant objective of Dye's meeting with Jess, even if it was not his primary goal.[6]

---

[6] In the closing lines of his argument, Dye alleges that his sentence is both procedurally and substantively unreasonable. Even if these claims were more fully developed, we would find them unavailing because the District Court conducted a thorough § 3553(a) analysis, provided sufficient justification for the sentence imposed, and the sentence itself is not "greater than necessary." *See United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009); *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006) (citation omitted), *abrogation on other grounds recognized by United States v. Wells*, 279 F. App'x 100, 101 (3d Cir. 2008).

III.

For the foregoing reasons, we will affirm the District Court's judgment of conviction and sentence.